**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARY LOU FIENI, | ) |
| Plaintiff, | ) Civil Action No. 09-cv-5587 |
| v. | ) HONORABLE CYNTHIA M. RUFE |
| FRANCISCAN CARE CENTER, | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ....................................................................................................... 1

II.     SUMMARY JUDGMENT STANDARD ........................................................................ 2

III.    STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS...................... 3

IV.     LEGAL ARGUMENT................................................................................................ 6

        A.    Plaintiff Does Not Have A Legally Cognizable Retaliation Claim Because
              She Never Engaged In Protected Activity ............................................................. 6

        B.    Plaintiff's ADA And ADEA Claims Fail ............................................................. 8

              1.    Plaintiff Does Not Even Attempt To Argue That She Is Qualified
                    For Protection Under The ADA And, Thus, She Cannot Establish
                    A *Prima Facie* Case Of Disability Discrimination.................................... 8

              2.    Even If Plaintiff Had Argued, And Could Show, That She Was
                    Protected Under The ADA, Her Claims That Young And Wilson
                    Had Knowledge Of Her "Disability" Are Not Supported By The
                    Record Evidence ................................................................................... 11

              3.    Plaintiff Could Not Have Been Terminated Because of Her Age,
                    As Young And Wilson Did Not Know Plaintiff's Age ........................... 14

              4.    Plaintiff Has No Evidence Demonstrating That Franciscan's
                    Legitimate, Non-Discriminatory Reason For Her Termination Was
                    A Pretext For Age or Disability Discrimination...................................... 15

V.      CONCLUSION............................................................................................................ 23

i

## TABLE OF AUTHORITIES

### CASES

*Ballo v. Adecco*, No. 05-5734, 2006 U.S. Dist. LEXIS 45324 (E.D. Pa. July 5, 2006) .......................................................................................................... 11

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ............................................. 2

*Bodenheimer v. PPG Industries, Inc.*, 5 F. 3d 955 (5th Cir. 1993) ............................................ 15

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996) .................................... 18

*Broussard v. Tex. Dep't of Crim. Justice*, 2007 U.S. App. LEXIS 17209 (5th Cir. July 19, 2007) ....................................................................................................... 7

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................................................ 6

*Byrne v. Ala. Alcohol Beverage Control Bd.*, 635 F. Supp. 2d 1281 (D. Ala. 2009) ................... 1

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 2

*Chappell v. GTE Products Corp.*, 803 F. 2d 261 (6th Cir. 1986) ............................................... 23

*Chubirka v. Int'l Paper/xpedx Paper & Graphics*, No. 04-5010, 2005 U.S. Dist. LEXIS 15839 (E.D. Pa. Aug. 2, 2005) .................................................................. 9, 15

*Conine v. SEPTA*, No. 03-3858, 2005 U.S. Dist. LEXIS 10453 (E.D. Pa. Mar. 17, 2005) ......................................................................................................... 14

*Conneen v. MBNA America Bank*, 182 F. Supp. 2d 370 (D. Del. 2002) ...................................... 1

*Connolly v. Pepsi Bottling Group, LLC*, 347 Fed. Appx. 757 (3d Cir. 2009) ............................ 13

*Deal v. Grubb*, No. 7:08-cv-00575, 2010 U.S. Dist. LEXIS 89645 (W.D. Va. Aug. 30, 2010) ....................................................................................................... 20

*Evans v. Maax-KSD Corp.*, 309 Fed. Appx. 644 (3d Cir. 2009) .................................................. 9

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ......................................................................... 16

*Fuka v. Thomson Consumer Electronics*, 82 F. 3d 1397 (7th Cir. 1996) ................................... 13

*Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343 (2009) ..................................................................... 23

*Gutknecht v. SmithKline Beecham Clinical Lab.*, 950 F. Supp. 667 (E.D. Pa. 1996) ......................................................................................................... 14

*Hartsock v. Wal-Mart Stores East, Inc.*, No. 07-3200, 2009 U.S. Dist. LEXIS 112873 (E.D. Pa. Nov. 23, 2009) ............................................................................... 3

*Hobbs v. City of Chi.*, 573 F.3d 454 (7th Cir. 2009) .................................................................... 7

*Hobson v. St. Luke's Hosp. & Health Network*, No. 08-cv-05652, 2010 U.S. Dist. LEXIS 82426 (E.D. Pa. Aug. 10, 2010) ................................................................. 8

*Hunter v. Stouffer Equip. Co.*, No. 4:08-cv-1270, 2009 U.S. Dist. LEXIS 83338 (M.D. Pa. Sept. 14, 2009) ............................................................................. 3

*Isler v. Keystone Sch. Dist.*, 335 Fed. Appx. 200 (3d Cir. 2009) ................................................ 7

*Jacoby v. Arkema, Inc.*, No. 06-2339, 2007 U.S. Dist. LEXIS 74915 (E.D. Pa. Oct. 4, 2007) ....................................................................................................... 10

*Keller v. Orix Credit Alliance*, 130 F.3d 1101 (3d Cir. 1997) ............................................ 13, 17

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996)....................................................... 9

*Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850 (7th Cir. 2008) ............................... 8

*Killen v. Mktg. Commun. Sys.*, 66 Fed. Appx. 293 (3d Cir. 2003) ................................. 23

*Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000) ...................................................... 9

*McDonald v. Pennsylvania*, 62 F.3d 92 (3d Cir. 1995) .................................................... 9

*Mease v. Wilmington Trust Co.*, No. 06-271-SLR, 2010 U.S. Dist. LEXIS 76593
  (D. Del. July 29, 2010)............................................................................................... 23

*Moore v. Jefferson County Dep't of Human Res.*, 277 Fed. Appx. 857 (11th Cir.
  2008) ........................................................................................................................... 20

*Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378 (3d Cir. 1999)............................ 18

*Perkins v. City of Elizabeth*, No. 05-3786, 2009 U.S. Dist. LEXIS 121504 (D.N.J.
  Dec. 30, 2009)............................................................................................................... 3

*Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182 (10th Cir. 2002) ................................... 7

*Rinehimer v. Cemcolift*, 292 F.3d 375 (3d Cir. 2002).................................................... 11

*Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003) .............................. 15

*Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010) ......................... 23

*Sever v. Henderson*, 381 F. Supp. 2d 405 (M.D. Pa. 2005).......................................... 11

*Shipe v. Haverford Twp.*, No. 09-0720, 2010 U.S. Dist. LEXIS 13702 (E.D. Pa.
  Feb. 16, 2010) ............................................................................................................. 23

*Simpson v. Kay Jewelers*, 142 F.3d 639 (3d Cir. 1998) ................................................ 16

*Skirpan v. Pinnacle Health Hosps.*, No. 1:07-CV-1703, 2010 U.S. Dist. LEXIS
  94499 (M.D. Pa. Apr. 21, 2010) ............................................................................... 1, 9

*Smith v. ABF Freight Systems*, No. 1:04-CV-2231, 2007 U.S. Dist. LEXIS 79801
  (M.D. Pa. Oct. 29, 2007)............................................................................................... 9

*Sulima v. Tobyhanna Army Depot*, 602 F.3d 177 (3d Cir. 2010) .................................... 8

*Supinski v. United Parcel Serv., Inc.*, No. 3:CV-06-0793, 2009 U.S. Dist. LEXIS
  3143 (M.D. Pa. Jan. 16, 2009) ..................................................................................... 9

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) ..................................................... 9

*United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990) ...................................... 1, 9

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) .................................................... 6

*Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir. 2007) ....................................................... 10

*Wurtz v. Day & Zimmerman, Inc.*, No. 08-3503, 2009 U.S. Dist. LEXIS 120610
  (E.D. Pa. Dec. 28, 2009)............................................................................................. 19

*Zeglen v. Miller*, No. 04-1940, 2007 U.S. Dist. LEXIS 96735 (M.D. Pa. Nov. 30,
  2007)............................................................................................................................. 7

## I.  **INTRODUCTION**

Plaintiff's opposition fails to identify any protected activity she purportedly engaged in to support an ADEA or ADA retaliation claim, neglects to make any argument concerning how she qualifies for protection under the ADA, and omits any sufficient explanation of why an organization that hired her at age 56 would suddenly decide to terminate her based on her age.[1] Plaintiff's opposition instead shows that she has no evidence calling into question the legitimate, non-discriminatory reason that Franciscan Care Center ("Franciscan") has repeatedly and consistently proffered for her June 23, 2008 termination:  Franciscan eliminated one Unit Clerk position for financial reasons and it rationally chose the individual with the least seniority in that position (Plaintiff) for termination.

Indeed, Plaintiff has either stipulated or cannot otherwise dispute that:  (a) she never complained about age or disability discrimination while employed by Franciscan; (b) neither of

---

[1] As a threshold matter, in opposition to Franciscan Care Center's motion for summary judgment, Plaintiff has narrowed the claims in her Complaint to allege only that her termination was discriminatory and retaliatory on the basis of her age and disability. (Pl.'s Opp. at 2 ("Plaintiff has asserted that her position of employment with the Defendant was terminated because of her age and disability on June 23, 2008."); *see generally* Pl.'s Opp. at 7-11 (not discussing any other basis for claims)). Thus, Franciscan should be awarded summary judgment on any other claims that might be construed from the face of her Complaint, such as an ADA failure to accommodate claim, or any non-termination-based ADA or ADEA claim. *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point."); *Skirpan v. Pinnacle Health Hosps.*, No. 1:07-CV-1703, 2010 U.S. Dist. LEXIS 94499, at *17 (M.D. Pa. Apr. 21, 2010) ("Where a plaintiff has brought a cause of action which is challenged through motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion. Indeed, a Plaintiff's failure to respond to these arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues"). As shown by Franciscan's moving memorandum, it is not surprising that Plaintiff has not continued to pursue these claims. (*See* Def. Memo. at 2 (explaining futility of reasonable accommodation claim because Plaintiff never requested any accommodation and did not need one to perform her job)); *Conneen v. MBNA America Bank*, 182 F. Supp. 2d 370, 378-79, 381 n.7 (D. Del. 2002) (plaintiff's failure to request accommodation warranted dismissal of reasonable accommodation claim, and failure to brief a separate theory of liability under ADA constituted waiver of that theory); *Byrne v. Ala. Alcohol Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1292-1294 (D. Ala. 2009) (holding that, even when taken together, "numerous acts" plaintiff alleged were discriminatory did not constitute adverse employment actions and were not actionable under Title VII).

the relevant decision-makers, Michele Young or Charlene Wilson, knew her age or believed she

was disabled in any way; (c) neither Young nor Wilson ever made disparaging comments about

her age or any of her medical conditions; (d) no one was hired to replace her after her job was

eliminated; and, (e) when another Unit Clerk position was later eliminated, Franciscan followed

the same methodology even though the result was that the youngest Unit Clerk was terminated.

The indisputable facts thus show that not only has Plaintiff failed to present evidence in *support*

of her claims, but all record evidence *refutes* her claims of discrimination. Therefore, Franciscan

respectfully requests that the Court grant its motion for summary judgment and dismiss

Plaintiff's Complaint with prejudice.

## II.    SUMMARY JUDGMENT STANDARD

Franciscan is entitled to summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). As the Third Circuit has noted, "summary judgment is essentially 'put up or shut up' time

for the non-moving party: the non-moving party must rebut the motion with facts in the record

and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Thus, in opposing

Franciscan's motion for summary judgment, Plaintiff must "set forth facts 'sufficient to

establish'" each essential element of her case, or else her claims must be dismissed. *Id.* (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Indeed, Plaintiff must present "enough

evidence for a reasonable juror to decide for [her]; a mere scintilla of evidence is not enough."

*Hartsock v. Wal-Mart Stores East, Inc.*, No. 07-3200, 2009 U.S. Dist. LEXIS 112873, at *6

(E.D. Pa. Nov. 23, 2009) (Rufe, J.).

"In responding to a properly pled motion for summary judgment, the burden lies on

2

Plaintiff to identify evidence which supports or provides better context for each of Plaintiff's allegations, and to bring such evidence to the Court's attention. . . . It is not the Court's responsibility to sift through Plaintiff's submissions in an attempt to find evidence which supports or provides better context for each of Plaintiff's allegations." *Perkins v. City of Elizabeth*, No. 05-3786, 2009 U.S. Dist. LEXIS 121504, at **9-10 (D.N.J. Dec. 30, 2009); *see also Hunter v. Stouffer Equip. Co.*, No. 4:08-cv-1270, 2009 U.S. Dist. LEXIS 83338, at *13 n. 10 (M.D. Pa. Sept. 14, 2009) (noting that courts will not "dredge through record evidence to find questions of material fact"). As further explained below, Plaintiff did not meet her burden in opposing Franciscan's motion for summary judgment because she failed to point to record evidence supporting numerous essential elements of her claims.

## III.   STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

Franciscan provides the following additional material facts which Plaintiff has no evidence to dispute:[2]

1.      Franciscan is dedicated to treating and supporting people advanced in age or suffering from physical ailments. (*See* Ex. A, Gibson Dep. 25:1-27:1 (describing that Franciscan treats Alzheimer's and short-term rehabilitation patients as well as provides long-term care for geriatric residents)).           **REDACTED**

2.      Greta Gibson's date of birth is          1957. (Ex. A, Gibson Dep. 12:3-5; Ex. B, Boschulte Decl. ¶ 2.)

3.      Gibson was hired at Franciscan as a Certified Nursing Assistant in 1994. (Ex. A, Gibson Dep. 19:2-21:17.)

---

[2] Plaintiff is well aware of these additional material facts. Almost all of these facts were presented to Plaintiff's counsel in composing the parties' statement of stipulated material facts. Plaintiff's counsel would not agree to stipulate to these facts because they were supported only by defense evidence. Of course, at the summary judgment stage, Plaintiff must do more than just flatly deny facts supported by the

4.     On June 19, 2005, Gibson assumed the position of Unit Clerk at Franciscan.  (Ex.

B, Boschulte Decl. ¶ 3.)     REDACTED

5.     Tina Spence's date of birth is         1961.  (Ex. B, Boschulte Decl. ¶ 4.)

6.     Spence began working in the position of Unit Clerk at Franciscan on October 9,

2005.  (Ex. B, Boschulte Decl. ¶ 5.)

7.     Due to financial difficulties, in 2008, Young reviewed Franciscan's budgeted

positions to see if there would be any positions that could be eliminated.  Young discovered that

there were only two budgeted positions for Unit Clerks.  (Ex. C, Young Dep. 77:20-78:24; Ex.

D, Wilson Dep. 34:11-35:24; 63:6-20.)

8.     Young and Wilson made the decision to terminate Plaintiff's employment to align

Franciscan with the proper number of budgeted Unit Clerk positions, because Plaintiff had

occupied the Unit Clerk position for less time than had the other two Unit Clerks, Gibson and

Spence.  (Ex. C, Young Dep. 78:18-79:15; 81:13-20; Ex. D, Wilson Dep. 63:6-20.)

9.     Young did not know Plaintiff's age at the time of Plaintiff's termination.  Young

believed that Plaintiff was younger than her based on how Plaintiff looked.  (Ex. C, Young Dep.

119:16-24; 122:2-123:4.)     REDACTED

10.     Young's date of birth is       , 1949.  (Ex. C, Young Dep. 13:14-17.)

11.     Wilson did not know Plaintiff's age or the age of any other Unit Clerk employed

at Franciscan at the time of Plaintiff's termination.  (Ex. E, Wilson Decl. ¶ 3.)

12.     No one discussed any employee's age in connection with the decision to eliminate

Plaintiff's position as a Unit Clerk at Franciscan.  (Ex. E, Wilson Decl. ¶ 3.)

---

record evidence merely because Plaintiff did not testify to them or does not have personal knowledge of
their subject matter.

13.     Wilson was not aware of Plaintiff suffering from any disability and did not perceive Plaintiff as having a disability.  (Ex. E, Wilson Decl. ¶¶ 5-6; Ex. D, Wilson Dep. 48:7-49:1.)

14.     Young never considered Plaintiff as being disabled in any way.  (Ex. C, Young Dep. 120:1-3.)

15.     Young was not aware of any settlement or resolution of any of Plaintiff's workers' compensation claims in June 2008.  (Ex. C, Young Dep. 98:23-99:4.)

16.     Wilson also was not aware of any settlement or resolution of Plaintiff's workers' compensation claims in June 2008.  (Ex. E, Wilson Decl. ¶ 7.)

17.     Franciscan utilized a third-party vendor, ESIS, to handle the day-to-day administration and processing of workers' compensation claims at the time of Plaintiff's termination.  (Ex. E, Wilson Decl. ¶ 7.)

18.     No one discussed any employee's medical condition in making the decision to eliminate Plaintiff's position as a Unit Clerk at Franciscan.  (Ex. E, Wilson Decl. ¶ 8.)

19.     Shortly after Plaintiff's termination, Gibson resumed working as a Unit Clerk on the wing that Plaintiff had worked, the "East Wing," and Gibson also continued her work as a Unit Clerk on the "East Pavilion."  (Ex. C, Young Dep. 105:22-106:4; Ex. A, Gibson Dep. 90:6-24.)

20.     At present, the sections of Franciscan Care Center previously referred to as "East Wing" and "East Pavilion" are no longer separate but are treated as one unit.  (Ex. A, Gibson Dep. 41:15-42:24; 49:4-50:22.)

21.     Spence's Unit Clerk position at Franciscan was eliminated effective October 21, 2009.  (Ex. B, Boschulte Decl. at ¶ 6.)

22.     Gibson is now the only Unit Clerk at Franciscan.  (Ex. B, Boschulte Decl. at ¶ 7.)

23.     Gibson assumed a portion of Spence's job duties when Spence's position was eliminated as a result of another reduction in force. (Ex. D, Wilson Dep. 69:12-23; Ex. A, Gibson Dep. 59:9-60:1; 94:1-97:3.)

## IV.     LEGAL ARGUMENT

### A.     PLAINTIFF DOES NOT HAVE A LEGALLY COGNIZABLE RETALIATION CLAIM BECAUSE SHE NEVER ENGAGED IN PROTECTED ACTIVITY

It is not clear whether Plaintiff's inclusion of language in her opposition suggesting an ADEA or ADA retaliation claim is unintentional,[3] but to the extent that Plaintiff intends to pursue a retaliation claim in this litigation, no such claim is cognizable. To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) Franciscan took adverse action after or contemporaneous with the protected activity; (3) the action would have been materially adverse to a reasonable employee in her position; and (4) a causal link exists between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). Noticeably absent from Plaintiff's opposition, however, is a single fact demonstrating that Plaintiff engaged in protected activity under the ADEA or ADA. To the contrary, the parties have stipulated that Plaintiff testified that *she never complained about age or disability discrimination, or any other type of discrimination, while she was employed by Franciscan*. (Stipulated Facts ¶¶ 46-47; 52; 63.) Not surprisingly given Plaintiff's own testimony, neither Young nor Wilson were aware of any complaints of discrimination by Plaintiff. (Ex. E, Wilson Decl. ¶ 5; Ex. C, Young Dep. 120:4-21.)

---

[3] For instance, Plaintiff's opposition cites the standard for retaliation under "Title VII and the PHRA" and mentions "McNeil's adverse actions," but Plaintiff has never purported to bring a Title VII or Pennsylvania Human Relations Act claim, and "McNeil" is not an individual involved in this case. (*See* Pl.'s Opp. at 8.)

Plaintiff's failure to present any evidence demonstrating that she engaged in protected activity, and that the decision-makers, Young and Wilson, were aware of that protected activity, dooms any retaliation claim that Plaintiff might have hoped to pursue. *Isler v. Keystone Sch. Dist.*, 335 Fed. Appx. 200, 202 (3d Cir. 2009) (granting summary judgment on ADA retaliation claim where Court did not find that plaintiff had engaged in protected activity); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (affirming summary judgment on retaliation claim and noting that a "plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity"); *Hobbs v. City of Chi.*, 573 F.3d 454, 463 (7th Cir. 2009) (plaintiff's retaliation claim fails because the manager who disciplined her did not know she filed an EEOC charge); *Broussard v. Tex. Dep't of Crim. Justice*, 2007 U.S. App. LEXIS 17209 (5th Cir. July 19, 2007) (granting summary judgment on retaliation claim because plaintiff "did not demonstrate that the [decision-maker] who filed the disciplinary case knew of the [plaintiff's] EEOC charge"); *Zeglen v. Miller*, No. 04-1940, 2007 U.S. Dist. LEXIS 96735, at *25 (M.D. Pa. Nov. 30, 2007) ("Absent evidence that the defendants knew about the plaintiff's protected speech, a substantial gap exists in any causal chain suggested even by temporal proximity."). Therefore, Franciscan is entitled to summary judgment on Plaintiff's retaliation claim.

### B.   PLAINTIFF'S ADA AND ADEA CLAIMS FAIL

#### 1.   Plaintiff Does Not Even Attempt To Argue That She Is Qualified For Protection Under The ADA And, Thus, She Cannot Establish A *Prima Facie* Case Of Disability Discrimination

To establish a *prima facie* case of disability discrimination, Plaintiff must show that: (1) she is disabled within the meaning of the ADA, (2) she is otherwise qualified for her job, with or without reasonable accommodation, and (3) she was subjected to an adverse employment action as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir.

7

2010). Plaintiff does not dispute that because she was terminated in June 2008, she must demonstrate that she had a legally cognizable disability under the recognized standards established prior to the ADA Amendments Act of 2008, which did not become effective until January 1, 2009. (*See* Def. Memo at 1 n.3); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008) (ADAAA does not apply retroactively); *Hobson v. St. Luke's Hosp. & Health Network*, No. 08-cv-05652, 2010 U.S. Dist. LEXIS 82426, at *30 (E.D. Pa. Aug. 10, 2010) (same). Under those standards, a plaintiff can only show that she is disabled if she is unable to perform a major life activity, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, or otherwise "significantly restricted as to the condition, manner or duration" in the way she performs a major life activity as compared to an average person in the general population. *Sulima*, 602 F.3d at 185. Alternatively, a plaintiff can show that although she does not have a cognizable disability, she was "regarded as disabled" because her employer "either mistakenly believed that [she] has a physical impairment that substantially limits one or more major life activities or mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Id.* at 188.

In her opposition, Plaintiff presents no evidence showing that she is a member of the class protected by the ADA. This is fatal to her ADA claim. *See Evans v. Maax-KSD Corp.*, 309 Fed. Appx. 644, 645 (3d Cir. 2009) (affirming grant of summary judgment where plaintiff could not demonstrate disability). Plaintiff had good reason to avoid arguing this key point, as the undisputed evidence demonstrates that she neither had an ADA-qualifying disability nor was perceived to have a disability by the relevant decision-makers on her termination. As discussed in Franciscan's moving memorandum, although Plaintiff claims to have physical impairments, none present any substantial limitations in any major life activity. (*See* Stipulated Facts ¶¶ 64-

8

80.) Therefore, Plaintiff cannot demonstrate that she has a "disability" under the ADA. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000) (inability to lift ten pounds and do chores not a disability); *Kelly v. Drexel University*, 94 F. 3d 102, 106-07 (3d Cir. 1996) (plaintiff who could not walk long distances, had noticeable limp, and difficulty climbing stairs not disabled); *McDonald v. Pennsylvania*, 62 F.3d 92 (3d Cir. 1995) (effects of major surgery not a disability); *Chubirka v. Int'l Paper/xpedx Paper & Graphics*, No. 04-5010, 2005 U.S. Dist. LEXIS 15839, at **11-16 (E.D. Pa. Aug. 2, 2005) (Rufe, J.) (citing cases holding that impairments causing problems like a "slight limp, need for ten-minute breaks while walking or standing, and occasional use of cane or crutch," "comparatively moderate restrictions on ability to walk or climb stairs, such as a limp," or an "inability to engage in various athletics, driving and performing household chores" were not disabilities); *Supinski v. United Parcel Serv., Inc.*, No. 3:CV-06-0793, 2009 U.S. Dist. LEXIS 3143 at * 16 (M.D. Pa. Jan. 16, 2009) (plaintiff not disabled where unable to pick up children, paint, move furniture, fix rain gutters, walk the dog, and perform yard work); *Smith v. ABF Freight Systems*, No. 1:04-CV-2231, 2007 U.S. Dist. LEXIS 79801 (M.D. Pa. Oct. 29, 2007) (inability to make repetitive arm motions not a disability).

It is unclear whether Plaintiff originally intended to attempt to raise a "regarded as" disability claim on the basis that she purportedly received workers' compensation settlement authorizations from her own attorney around the time of her termination, (*See* Compl. ¶¶ 19-29), but Plaintiff failed to advance this theory in her opposition and it should be foreclosed. *See Perkins*, 2009 U.S. Dist. LEXIS 121504, at **9-10; *Hunter*, 2009 U.S. Dist. LEXIS 83338, at *13 n. 10; *Giovannetti*, 919 F.2d at 1230; *Skirpan*, 2010 U.S. Dist. LEXIS 94499, at *7. Nevertheless, any "regarded as" claim would be without merit because neither Young nor Wilson perceived Plaintiff as having a "disability," a medical condition that substantially limited

a major life activity. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 179 (3d Cir. 2007) (plaintiff must

show decision-maker believed plaintiff was disabled "within the meaning of the statute"); *Jacoby*

*v. Arkema, Inc.*, No. 06-2339, 2007 U.S. Dist. LEXIS 74915, at **37-45 (E.D. Pa. Oct. 4, 2007)

(defendant's awareness of medical restrictions as a result of impairments insufficient to state

"regarded as" claim).   As Your Honor has succinctly explained:

> Plaintiff argues that [her employer] regarded her as disabled because it was fully
> aware of her injury, her receipt of short-term disability benefits, and her return to
> work under restricted conditions. ***This argument is contrary to the established***
> ***law in this Circuit.*** A "mere fact that an employer is aware of an employee's
> impairment is insufficient to demonstrate either that the employer regarded the
> employee as disabled or that perception caused the adverse employment action."
> Further, "an offer of accommodation does not, by itself, establish that an
> employer 'regarded' an employee as disabled."

*Chubirka*, 2005 U.S. Dist. LEXIS 15839, at **18-19. Thus, even if Plaintiff had argued, and

could show, that Wilson or Young had knowledge of a workers' compensation settlement

pertaining to Plaintiff or knowledge of some of Plaintiff's medical conditions, this would be

insufficient to demonstrate that they regarded her as disabled under the ADA. As a result,

Plaintiff's mention in her opposition of alleged receipt of paperwork pertaining to a workers'

compensation settlement around her termination date is an irrelevant red herring,[4] especially in

light of Young's and Wilson's uncontradicted testimony that they did not believe Plaintiff was

disabled. (Ex. C, Young Dep. 120:1-3; Ex. D, Wilson Dep. 48:7-49:1.)

Given the foregoing, Plaintiff cannot establish a *prima facie* case under the ADA, and

Franciscan is entitled to summary judgment on her ADA claim.

---

[4] As explained in Franciscan's moving memorandum, while Plaintiff would like to rely upon the alleged
receipt of workers' compensation paperwork to establish some sort of favorable timing to support her
claims in an unspecified way, the evidence simply does not show that Plaintiff received this paperwork
before her termination, let alone that Wilson and Young knew or had reason to know of facts connected to
her workers' compensation claims. (*See* Def. Memo. at 2 n.4; Ex. C, Young Dep. 98:23-99:4; Ex. E,
Wilson Decl. ¶ 7; Stipulated Facts ¶¶ 88-92.) Indeed, Franciscan utilized a third-party administrator to
process workers' compensation claims, and no employee's medical condition was discussed in the
decision to eliminate Plaintiff's Unit Clerk position at Franciscan. (Ex. E, Wilson Decl. ¶ 7-8.)

**2.    Even If Plaintiff Had Argued, And Could Show, That She Was Protected Under The ADA, Her Claims That Young And Wilson Had Knowledge Of Her "Disability" Are Not Supported By The Record Evidence**

Of course, even if Plaintiff had a legally cognizable disability, she must prove that the decision-makers, Young and Wilson, actually knew that she was disabled for her ADA termination claim to succeed. *Sever v. Henderson*, 381 F. Supp. 2d 405, 417 (M.D. Pa. 2005) (noting that even if plaintiff was disabled, to succeed on disability discrimination claim, "Plaintiff must nonetheless offer evidence that Defendants had knowledge of the disability at that time," and collecting authority for same proposition); *see also Rinehimer v. Cemcolift*, 292 F.3d 375, 380 (3d Cir. 2002) ("to establish discrimination because of a disability, an employer must know of the disability"); *Ballo v. Adecco*, No. 05-5734, 2006 U.S. Dist. LEXIS 45324, at * 30 (E.D. Pa. July 5, 2006) (same proposition, granting summary judgment for employer).

At least implicitly acknowledging this hurdle, Plaintiff claims in her opposition that (1) "Despite Defendant's argument to the contrary, it was aware of Ms. Fieni's disability," and (2) "Wilson conceded to Ms. Fieni at the June 23, 2008 termination meeting, that Franciscan Care Center did not hire handicapped individuals and that she (Ms. Fieni) was handicapped." (Pl.'s Opp. at 10.)  These statements, however, are not supported by the cited deposition pages.

Initially, it is notable that Plaintiff broadly claims that Franciscan was aware of Plaintiff's "disability" without ever having identified, in her Complaint or her entire opposition, what that "disability" was.  Moreover, she inappropriately cites to Young's deposition testimony which states that Young "believe[d]" that Franciscan had decided, *prior to Young's arrival*, to assign Plaintiff to "supplement" Gibson's duties as Unit Clerk in the 400 and 500 units [East Wing] because "facility personnel wanted to put Ms. Fieni into a position that met her physical needs," as she would not have to do any "heavy lifting, any bending, [or] any pushing of the residents."

11

(Ex. C, Young Dep. 64:20-65:14.) Young's testimony does not show that *Young* believed Plaintiff had some unspecified disability which substantially limited her *major life functions*, as required under the ADA. (*See supra* at 9-10.) It also does not support any claim that Wilson believed Plaintiff had any such disability. (*See* Stipulated Facts ¶¶ 39-41, 45 (stipulating that Plaintiff never discussed a belief that she was handicapped with Young or Wilson and never remembers discussing any work restrictions with anyone at Franciscan)). Similarly, Plaintiff's testimony that she told Lori Clemmons that she was "partially disabled with the arm" after Clemmons had told Plaintiff that Clemmons could terminate Plaintiff for failing to do her work and failing to know the answers to Clemmons' questions, (Pl.'s Ex. B, Fieni Dep. 167:1-168:1), also does not create a genuine issue of material fact about whether *Wilson* or *Young* believed Plaintiff had an impairment that substantially limited her major life activities. There is no evidence that Clemmons ever spoke to Wilson or Young about Plaintiff's alleged statement to her.

As to Wilson's alleged statement to Plaintiff about the hiring of "handicapped" people, while Franciscan and Wilson dispute that Wilson ever made such an incredible statement, even Plaintiff did not go so far as to testify that Wilson conceded that Plaintiff was "handicapped" or even mentioned any of Plaintiff's medical conditions at the June 23, 2008 termination meeting, as Plaintiff now contends.[5] As such, Wilson's alleged statement that Franciscan does not hire "handicapped" people, which was allegedly made *after* Plaintiff had been informed she was terminated, does not provide evidence that Wilson knew or believed that Plaintiff was disabled. Moreover, as Franciscan set forth in its moving memorandum, and Plaintiff did not dispute in

---

[5] Plaintiff's claim that Wilson conceded that Plaintiff was handicapped (Pl.'s Opp. Br. at 10) is simply wrong. Plaintiff's attempt to tie that claim to deposition testimony that does not support it is a tacit admission that there is no evidence to support the claim, which Plaintiff acknowledges is integral to her case. (*See also* Stipulated Facts ¶ 40 (stipulating that Plaintiff never told Wilson that she believed she

12

opposition, there is no evidence that Wilson's alleged comment was directed to Plaintiff's

situation because Plaintiff had been terminated, not considered for hire; and there is no evidence

that Franciscan actually has any such hiring policy. (*See* Def. Memo. at 5.) Thus, even if taken

as true, Wilson's comment was nothing more than a "stray remark" irrelevant to the merits of

Plaintiff's claims. *See, e.g. Fuka v. Thomson Consumer Electronics*, 82 F. 3d 1397, 1403-04

(7th Cir. 1996) (alleged statements that revealed age bias in hiring practices insufficient to

establish pretext in termination claim); *Connolly v. Pepsi Bottling Group, LLC*, 347 Fed. Appx.

757, 761 (3d Cir. 2009) (allegedly ageist comments made "outside the context of th[e]

decisionmaking process" insufficient to establish discrimination claim); *Keller v. Orix Credit

Alliance*, 130 F.3d 1101, 1112 (3d Cir. 1997) (allegedly ageist remark by decision-maker did not

demonstrate that age was "a determinative cause" of termination because the "remark did not

refer to the question whether [plaintiff] should be retained or fired but instead concerned the

hiring of other employees"); *Conine v. SEPTA*, No. 03-3858, 2005 U.S. Dist. LEXIS 10453, at

*31 (E.D. Pa. Mar. 17, 2005) (interviewer's allegedly sexist comment was "stray remark'

insufficient to preclude summary judgment, where, *inter alia*, comment was made after

defendant already decided not to hire plaintiff); *Gutknecht v. SmithKline Beecham Clinical Lab.*,

950 F. Supp. 667, 671 (E.D. Pa. 1996) (decision-maker's allegedly ageist comments made after

termination, absent any evidence that comments related to the decisional process of terminating

plaintiff, did not creater material issue of fact).

   Because Plaintiff cannot show that Young or Wilson knew that she had a "disability," her

ADA claim fails on this basis as well.

---

was handicapped)).

### 3.     Plaintiff Could Not Have Been Terminated Because of Her Age, As Young And Wilson Did Not Know Plaintiff's Age

Plaintiff only accuses Young, who is herself in the protected age class and only six years younger than Plaintiff, of age discrimination. (Stipulated Facts ¶ 49; Ex. C, Young Dep. 13:14-17.)  However, Plaintiff, who was hired by Franciscan when she was 56 years old and well within the protected age group, cannot dispute Young's testimony that she (a) did not know Plaintiff's age, and (b) actually believed that Plaintiff was younger than her based on Plaintiff's appearance. (*See* Ex. C, Young Dep. 119:16-24; 122:2-123:4).  Meanwhile, Young herself was well within the protected age class at 58 years old in 2008 when Plaintiff was terminated, making it implausible that she would maintain age-based animus toward Plaintiff. (Ex. C, Young Dep. 13:14-17.)

Moreover, even though Plaintiff does not accuse Wilson of age discrimination, Wilson also did not know Plaintiff's age, and Wilson testified that no employee's age was discussed in connection with the decision to eliminate the Plaintiff's Unit Clerk position. (Ex. E, Wilson Decl. ¶ 3-4.)

With no evidence that Young or Wilson knew her age or considered her age in the decision-making process leading to her termination, Plaintiff cannot establish that she was selected for termination based on her age. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003) ("Absent knowledge of [plaintiff's] age, [the decision-maker's] decision not to reinstate him does not raise an inference of age discrimination"); *Bodenheimer v. PPG Industries, Inc.*, 5 F. 3d 955, 958 n. 6 (5th Cir. 1993) ("[The decision-maker's] misstatement leads us to conclude that [he] did not know the ages of the terminated employees, which buttresses [the employer's] claim that age was not a factor in [plaintiff's] termination.  To avoid summary judgment, [plaintiff] must create the opposite factual issue: [the decision-maker] knew

14

their ages, and such knowledge was a factor in terminating [plaintiff]"). Therefore, Franciscan is entitled to summary judgment on Plaintiff's ADEA claim.

       **4.    Plaintiff Has No Evidence Demonstrating That Franciscan's Legitimate, Non-Discriminatory Reason For Her Termination Was A Pretext For Age or Disability Discrimination**

    "It is not for the Court to second guess the employer's decisional process." *Chubirka v. Int'l Paper/xpedx Paper & Graphics*, No. 04-5010, 2005 U.S. Dist. LEXIS 15839, at \*23 (E.D. Pa. Aug. 2, 2005) (Rufe, J.) (granting summary judgment for employer). Thus, unless Plaintiff can point to evidence demonstrating that Franciscan's proffered reason for her termination was pretextual, Franciscan is entitled to summary judgment.

    Here, Franciscan has consistently stated its legitimate, non-discriminatory reason for Plaintiff's termination. The decision-makers, Young and Wilson, uniformly testified that Plaintiff was terminated as a result of one Unit Clerk position being eliminated and Plaintiff having the least seniority in that position. (Ex. C, Young Dep. 77:20-79:15; 81:13-20; Ex. D, Wilson Dep. 34:11-35:24; 63:6-20; Stipulated Facts ¶¶ 31-34.) Plaintiff also admitted that she was informed, contemporaneously with the communication of the termination decision, that this was the reason for her termination. (Stipulated Facts ¶¶ 32-34.) Indeed, it cannot be disputed that the other two Unit Clerks, Spence and Gibson, had been in the position for years, whereas Plaintiff had occupied the position for less than six months as of her termination date. (Stipulated Facts ¶¶ 15-16; Ex. B, Boschulte Decl. ¶¶ 3, 5; Ex. A, Gibson Dep. 12:3-5; 40:13-18). Likewise, in consistent fashion, when another Unit Clerk position was later eliminated, again the person with the lowest seniority in the Unit Clerk position (Spence) was terminated although she was the youngest Unit Clerk. (Stipulated Facts ¶¶ 16, 17; Ex. B, Boschulte Decl. ¶¶ 2-7; Ex. D, Wilson Dep. 69:12-13; Ex. A, Gibson Dep. 40:13-18; 59:9-60:1; 94:1-97:3.) Thus, there can be no doubt that Franciscan has proffered a legitimate, non-discriminatory reason

for Plaintiff's termination.

In order to create a factual dispute at the pretext stage, Plaintiff must introduce evidence from which a factfinder could reasonably either (1) disbelieve Franciscan's articulated legitimate reason for her termination, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Franciscan's action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998). In *Fuentes*, The Third Circuit addressed the quantum of evidence that is required to be produced by a plaintiff at the pretext stage in order to avoid summary judgment:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action.... To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.... Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ... and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

32 F.3d at 764-65; *see also Simpson*, 142 F.3d at 647 ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination."). Put another way, "the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). This standard places a difficult burden on a plaintiff, *see Fuentes*, 32 F.3d at 765, and Plaintiff has utterly failed to meet this burden.

In contrast to all of the record evidence demonstrating the legitimacy and truthfulness of the reason Franciscan gave for her termination, Plaintiff has not offered a scintilla of evidence

16

that she was ever subjected to disparate treatment or disparaging comments based on her age or any alleged disability, or that Young or Wilson ever discussed her age or any alleged disability with her so as to even suggest that these characteristics played a role in her termination. (*See* Stipulated Facts ¶¶ 50, 51, 57-62.) Further, Plaintiff never complained about age or disability discrimination or harassment while employed – a telling fact given that it is stipulated that she received and read Franciscan's employee handbook and became familiar with its contents, which included a policy prohibiting discrimination and harassment on the basis of age and disability and providing a reporting procedure for such claims. (*See* Stipulated Facts ¶¶ 5-7; Stipulated Facts Ex. 1 (Handbook) at 23-24.)

In her opposition, Plaintiff suggests two reasons which she contends show that Franciscan's reason for her termination should be disbelieved:  (1) she claims that in its position statement to the EEOC,[6] Franciscan asserted that poor performance "played a major role in the elimination of her position" and that Franciscan falsely asserted that Plaintiff was the only Unit Clerk in "the disciplinary process" at the time of her termination; and (2) Franciscan "filled" Plaintiff's position with Gibson immediately after her termination. (*See* Pl.'s Opp. at 9-10). Neither reason suggested by Plaintiff establishes pretext.

        a.    Franciscan's Position Statement To The EEOC Does Not Evidence Pretext

            (i)    Plaintiff's Exhibit E is inadmissible and cannot be considered on summary judgment

As an initial matter, Plaintiff improperly attempts to rely upon her Exhibit E (which quotes portions of Franciscan's position statement to the EEOC) in claiming that the reason offered by Franciscan in its position statement for her termination is inconsistent with the reason

---

[6] Notably, Plaintiff did not file Franciscan's position statement to the EEOC with her opposition.  Instead, she filed as "Exhibit E" to her opposition *her own position statement to the EEOC* which she entitled

17

offered here.  Plaintiff's Exhibit E is not properly before the Court and should be stricken from

the Court's consideration of Franciscan's summary judgment motion.  Plaintiff's Exhibit E is

unverified, not based on personal knowledge, contains numerous levels of inadmissible hearsay,

and even contains representations about what occurred during the EEOC's mediation process,

which this Court must not consider.  *See* Fed. R. Evid. 602 (requirement of personal knowledge);

802 (hearsay inadmissible); 805 (each part of hearsay within hearsay must conform to an

exception to be admissible); 408 (conduct or statements made in compromise negotiations

inadmissible to prove liability or to impeach); *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d

378, 387 n. 13 (3d Cir. 1999) (holding that it is improper to consider evidence that would not be

admissible at trial in deciding motion for summary judgment);  *Bombard v. Fort Wayne

Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) (inadmissible hearsay must be excluded from

consideration on summary judgment).

> (ii)    Franciscan's position statement to the EEOC does not
> demonstrate that Franciscan offered a different reason for
> Plaintiff's termination before the EEOC than that offered to
> Plaintiff

Furthermore, even if Plaintiff's Exhibit E were properly before the Court, it does not

demonstrate any material inconsistency in the legitimate, non-discriminatory reason for

Plaintiff's termination.  Franciscan's position statement to the EEOC, like Young's and Wilson's

deposition testimony and Franciscan's moving memorandum, proffers that Plaintiff's job was

eliminated for economic reasons and that Plaintiff was the employee with the least seniority in

the eliminated Unit Clerk position.  Indeed, Franciscan's position statement states:

> As it did and continues to do across the country, however, economic conditions
> intervened.  Declining revenues and reimbursements forced St. Francis Hospital
> as well as the Care Center to implement staff reductions wherever they could.
> Because the third Unit Secretary/Clerk position had been created purely as an

---

"Complainant's Rebuttal to Respondent's Position Statement" (hereinafter "Plaintiff's Exhibit E").

accommodation for the Charging Party, and because it therefore was not essential, it could be eliminated without impacting patient care.

Having decided to eliminate one Unit Secretary/Clerk, the Care Center assessed the three incumbents in the position to determine whom to retain. Of the three incumbents, Charging Party had been in the job for the least amount of time, was the poorest performer, and was the only one who was in the disciplinary process. It was clear that it was in the best interests of the Care Center and its patients to retain Ms. Gibson and Ms. Spence rather than Charging Party.

Contrary to Plaintiff's assertion, Franciscan's position statement clearly does not state

that Plaintiff's poor performance played a "major role" in the elimination of her position.

Moreover, the reason offered in the position statement for Plaintiff's termination is not

inconsistent and does not evidence pretext simply because it endeavored to give additional

context to the EEOC to demonstrate that Plaintiff had not been discriminated against by detailing

her various disciplinary offenses (thereby showing that if Plaintiff did not drastically improve her

work, she could have been terminated even absent any economic circumstances). *See Wurtz v.*

*Day & Zimmerman, Inc.*, No. 08-3503, 2009 U.S. Dist. LEXIS 120610, at *22 (E.D. Pa. Dec. 28,

2009) (plaintiff could not demonstrate pretext where company and decision-makers consistently

stated at time of termination and thereafter that plaintiff was terminated for budgetary reasons by

pointing to statement in decision-maker's deposition that plaintiff's performance was also an

issue factoring into her termination); *see also Simpson*, 142 F.3d 639, 649 n.15 (discussing

inconsistencies in an EEOC position statement and noting that "the mere fact that a defendant

relies on a post hoc [explanation] does not in and of itself create a factual dispute about whether

the [explanation was] pretextual"); *Moore v. Jefferson County Dep't of Human Res.*, 277 Fed.

Appx. 857, 860 (11th Cir. 2008) ("although the reasons cited for promoting the female

candidates in the EEOC position statement differed slightly from deposition testimony, that

alone does not establish pretext"); *Deal v. Grubb*, No. 7:08-cv-00575, 2010 U.S. Dist. LEXIS

89645, at **25-26 (W.D. Va. Aug. 30, 2010) (granting summary judgment for employer

although position statement to EEOC stated that plaintiffs were not selected for position for two reasons, one of which later turned out to be plainly incorrect, reasoning, "The EEOC position statement was not written by Lilly or any other fact witness to the selection process, and the court is convinced that the single, isolated error contained in the statement is not probative of pretext").

>        (iii)    Franciscan's position statement to the EEOC does not
>                 falsely assert that Plaintiff was the only Unit Clerk in the
>                 disciplinary process at the time of her termination

Plaintiff also claims that Franciscan's position statement to the EEOC falsely asserted that Plaintiff was the only Unit Clerk in the "disciplinary process" at the time of her termination. To this end, Plaintiff alleges that Gibson had a "poor work record" at the time of Plaintiff's termination, that Gibson had received a suspension two years before, and that Gibson had been issued a final warning with intent to terminate at the time of Plaintiff's termination. (Pl.'s Opp. at 10.) Although Plaintiff cites to Gibson's deposition testimony to support these allegations, *Gibson never testified as Plaintiff contends*. On the single page of Gibson's deposition that Plaintiff cites for these propositions (page 78), Gibson merely explained that *seven or eight years ago, before she was a Unit Clerk*, she had been disciplined for failing to move her car during a snow storm, an incident hardly material here. Gibson also testified (in pages not cited by Plaintiff) that she had received a written warning within the last year *of the date of her deposition*, which was June 29, *2010*. (Ex. A, Gibson Dep. 82:16-84:8.) Thus, Plaintiff misrepresented that Gibson was on a final written warning at the time of Plaintiff's termination, when in fact that warning did not occur until *after* Plaintiff's termination, which was in June 2008. (Ex. B, Boshulte Decl. ¶ 10.) Plaintiff similarly mischaracterized Gibson's testimony about her suspension. Gibson did not testify that she had been suspended in the two years prior to Plaintiff's termination. Instead, Gibson testified that at some unidentified point in the past,

she had been suspended for a "complex issue" involving her placement of socks on the hands of a patient with dementia who was making herself bloody by scratching herself. (*See* Ex. A, Gibson Dep. 79:16-82:5.) In fact, Gibson's suspension occurred in *October 2004, before* Gibson became a Unit Clerk and almost *four years* prior to Plaintiff's termination; and the suspension was rescinded upon Gibson's appeal. (*See* Ex. B, Boschulte Decl. ¶¶ 8-10.) Thus, Plaintiff has presented *no* evidence that Gibson was a Unit Clerk in "the disciplinary process" at the time of Plaintiff's termination.[7]

On the other hand, Plaintiff had received two written warnings in the month before her termination. (*See* Stipulated Facts ¶¶ 19, 24.) These warnings were for Plaintiff's assorted violations of work rules, including telling her supervisor that she was not allowed to call a physician when her supervisor requested that she do so, failing to review lab orders to determine if they were still pertinent to residents' needs, and incurring an unwarranted $900 shipping charge by using poor judgment. (Stipulated Facts ¶¶ 19, 24.) As such, Plaintiff (unlike Gibson) was clearly in "the disciplinary process" at the time of her termination, as stated in Franciscan's EEOC position statement.

Given the above, Franciscan's position statement to the EEOC does not evidence pretext.

          b.     <u>Gibson's Resumption Of Unit Clerk Duties In The Area That Had Been Assigned To Plaintiff In January 2008 Does Not Demonstrate Pretext</u>

Plaintiff has no authority demonstrating that a company acts with discriminatory animus merely by using existing staff to assume, in addition to their existing duties, the job duties previously performed by an individual whose job was eliminated. This lack of any support for her pretext argument concerning Gibson's resumption of her job duties after June 23, 2008 is

---

[7] Likewise, Plaintiff has not even contended, and there is no record evidence demonstrating that, Spence, the other Unit Clerk, was in the "disciplinary process" at the time of Plaintiff's termination.

especially critical here. In her analysis, Plaintiff completely ignores the parties' stipulation that

Gibson performed the *very same duties* (covering the Unit Clerk functions in the sections of

Franciscan previously known as "East Wing" and "East Pavillion") before a portion of those

duties (covering the Unit Clerk function in "East Wing") were assigned to Plaintiff in January

2008. (*See* Stipulated Facts ¶ 16.) It also cannot be disputed that both of the other Unit Clerks

working at Franciscan as of June 23, 2008 had vastly more seniority in the position than did

Plaintiff, who had only worked as a Unit Clerk for six months. (*See* Stipulated Facts ¶¶ 12, 15,

16; Ex. B, Boschulte Decl. ¶¶ 3, 5.) Put simply, Franciscan's decision to eliminate the Unit

Clerk with the least experience (Plaintiff) and return the job duties she had been performing to

Gibson, who had already performed the exact same duties, made perfect business sense and

evinced no indicia of unlawful discrimination. Thus, Plaintiff cannot salvage her ADEA claim

by arguing that Gibson, who is younger but still in the protected age class, merely resumed

responsibility for Plaintiff's job duties after Plaintiff was terminated. *See Killen v. Mktg.*

*Commun. Sys.*, 66 Fed. Appx. 293, 297 (3d Cir. 2003) (affirming summary judgment for

employer although younger employees assumed plaintiff's job duties, and emphasizing that "in

taking over most of [plaintiff's] duties, [the younger comparator] was performing many of the

same tasks she had in the past, not assuming a new position in the company"); *Shipe v.*

*Haverford Twp.*, No. 09-0720, 2010 U.S. Dist. LEXIS 13702, at \*\*23-28 (E.D. Pa. Feb. 16,

2010) (granting summary judgment for employer on ADEA claim despite fact that younger

employees assumed duties of Plaintiff's position); *Mease v. Wilmington Trust Co.*, No. 06-271-

SLR, 2010 U.S. Dist. LEXIS 76593, at \*\*29-30 (D. Del. July 29, 2010) ("delegation of duties to

a younger employee alone, however, is not sufficient to demonstrate pretext."); *see also*

*Chappell v. GTE Products Corp.*, 803 F. 2d 261, 267 (6th Cir. 1986) ("The isolated fact that a

younger person eventually replaces an older employee is not enough to permit a rebuttal

inference that the replacement was motivated by age discrimination").

Plaintiff offers no further reason for this Court to disbelieve Franciscan's proffered reason for terminating her, and the ones she has offered are not supported by the record evidence. Plaintiff thus cannot carry the steep burden of demonstrating that age and/or disability were "but for" causes of her termination, and cannot succeed on her claims. *See Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2352 (2009) ("but for" analysis applies to ADEA); *Serwatka v. Rockwell Automation*, Inc., 591 F.3d 957, 962-64 (7th Cir. 2010) (same, ADA). Therefore, Franciscan is entitled to summary judgment on all of Plaintiff's claims.

## V.    **CONCLUSION**

Franciscan is dedicated to treating and supporting people advanced in age and suffering from physical ailments – it does not discriminate against them, and it did not discriminate against Plaintiff. Plaintiff may be upset that, like many Americans over the past several years, she lost her job, but the mere fact that she is over 40 and had some medical ailments is woefully insufficient to establish a claim of unlawful discrimination. Accordingly, Franciscan respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

*/s/ William J. Simmons*

Robert W. Cameron, Esquire (PA #69059)
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7600
bcameron@littler.com

William J. Simmons, Esquire (PA #206860)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
267.402.3000
wsimmons@littler.com

*Attorneys for Defendant*
*Franciscan Care Center*

Date: November 2, 2010

## CERTIFICATE OF SERVICE

I, William J. Simmons, hereby certify that on this 2nd day of November, 2010, I filed with the Court the foregoing Defendant's Reply Brief in Further Support of Motion for Summary Judgment, with supporting documents, via the Court's Electronic Filing System, and counsel for Plaintiff, Ernest Sasso, Esquire, was served on the same date via the same means.

*/s/ William J. Simmons*
WILLIAM J. SIMMONS