**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **MARY LOU FIENI,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO. 09-5587** |
| | : | |
| **FRANCISCAN CARE CENTER,** | : | |
| **Defendant.** | : | |
| | : | |

---

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                 **September 30, 2011**

Plaintiff Mary Lou Fieni ("Plaintiff" or "Ms. Fieni") brings this action against her former employer, Defendant Franciscan Care Center ("Defendant" or "Franciscan"), pursuant to the Age Discrimination in Employment Act of 1967, as amended ("ADEA"),[1] and the Americans with Disabilities Act of 1990 ("ADA"),[2] alleging that she was improperly terminated on the basis of age and disability, and in retaliation for receiving workers' compensation benefits pursuant to a claim for workplace injury.[3]  Now before the Court is Defendant's Motion for Summary Judgment[4] as to all claims.

## I.        FACTUAL AND PROCEDURAL BACKGROUND[5]

---

[1] 29 U.S.C. §§ 621, *et seq.*

[2] 42 U.S.C. §§ 12111-12117.  The ADA incorporates by reference certain sections of Title VII of the Civil Rights Act of 1964 ("Title VII").  However, Plaintiff has not properly pleaded separate Title VII claims, nor did Plaintiff bring this action under the Pennsylvania Human Relations Act ("PHRA") or any other Pennsylvania law or statute. Therefore, Plaintiff's claims will be considered only as they arise under the ADEA and the ADA.

[3] Compl. at 1 & ¶¶ 15-29.

[4] Def.'s Mem. in Supp. of its Mot. for Summ. J. ("Def.'s Mot.") [Doc. No. 11-3].

[5] The factual history is undisputed unless otherwise noted. Where there is a factual dispute, as long as Ms. Fieni has record support for her position, the facts are viewed in the light most favorable to her.

Ms. Fieni's employment with Franciscan Care Center began on or about January 24, 2000, and ended on June 23, 2008.[6]  Franciscan is a long-term care and rehabilitation facility affiliated with St. Francis Hospital in Wilmington, Delaware.  Ms. Fieni was first hired as a Scheduler, with responsibility for setting and monitoring nursing staff schedules, tracking licenses and certificates for nurses and other employees, and processing payroll submissions and invoices.[7]

Ms. Fieni's physical problems appear to have started around March 2007, when she transferred to a position as a Supply Coordinator, where her duties included monitoring and maintaining inventory and processing supply charges.[8]  At some time toward the end of that month, Ms. Fieni suffered a workplace injury to her back while lifting a box.[9]  She alleges this injury was due to Franciscan's negligence in failing to inform her that the Supply Coordinator position would require her to lift more than fifty pounds and climb ladders, because she would not have accepted the position had she known of these requirements.[10]  Thereafter, Ms. Fieni's physician imposed restrictions on her ability to lift and push, requiring her transfer to a less physically demanding position.[11]

Ms. Fieni was offered the position of Unit Clerk, where her responsibilities would include clerical and filing functions for patients.  Franciscan claims it created a third full-time Unit Clerk for the express purpose of accommodating Ms. Fieni's need for a less physically demanding job, as Franciscan already employed two Unit Clerks.[12]  Before this transfer took place, however, Ms. Fieni suffered a second workplace injury, slipping and falling on a wet

---

[6] Statement of Stipulated Material Facts for Summ. J. Purposes ¶ 2 ("Stip. Facts") [Doc. No. 11-2].
[7] Pl.'s Opp'n, Ex. E at 3 (Compl't's Rebuttal to Resp't's Position Statement (EEOC Charge No. 530-2008-03395)) (hereinafter "Rebuttal").
[8] Rebuttal at 4.
[9] Rebuttal at 5.
[10] Rebuttal at 5.
[11] Rebuttal at 5.
[12] Rebuttal at 5.

floor; Franciscan reported this accident to its workers' compensation carrier, and, after arthroscopic surgery on her knee, Ms. Fieni took a leave of absence from December 12, 2007 through January 12, 2008.[13]

On January 12, 2008, Ms. Fieni returned to work in her new position as Unit Clerk for the "East Wing" of the Franciscan facility,[14] replacing a departing part-time Unit Clerk. Ms. Fieni joined two other full-time Unit Clerks, Greta Gibson and Tina Spence, under the supervision of new Nursing Home Coordinator/Administrator Michele Young and Director of Nursing Cathy Hawkinson.[15] On May 12, 2008, Ms. Young and Ms. Hawkinson presented the Unit Clerks with a new form entitled "Expectations of the Unit Clerk," which all three Clerks signed.[16] Shortly thereafter, on May 21st, Ms. Hawkinson issued a written warning to Ms. Fieni for refusing to call a physician when directed to do so, and for failing to review and cancel lab orders as needed.[17] On May 26th, Ms. Hawkinson issued Ms. Fieni a written warning for "poor judgment in ordering supplies" which resulted in a large shipping charge.[18] There is significant dispute between the parties as to the quality of Ms. Fieni's job performance both as a Unit Clerk and in her earlier positions, and what role her performance played in Franciscan's decision to terminate her.[19]

Ms. Young has testified that soon after her own arrival at Franciscan in January 2008, at the direction of Franciscan's affiliate Saint Francis Hospital, she was tasked with downsizing Franciscan's staff due to the Hospital's financial difficulties.[20] As part of this effort, Ms. Young and Charlene Wilson, Vice President of Human Resources and Organizational Development, reviewed Franciscan's positions and determined that only two positions were budgeted for Unit

---

[13] Stip. Facts ¶ 10.
[14] Stip. Facts ¶ 12.
[15] Stip. Facts ¶ 18.
[16] Stip. Facts ¶ 18.
[17] Stip. Facts ¶ 19.
[18] Stip. Facts ¶ 24.
[19] See generally, Rebuttal.
[20] Dep. of Michele Young 77:22-78:13 ("Young Dep.").

Clerks.[21]  Accordingly, Ms. Young terminated Ms. Fieni, because she was the Unit Clerk with the shortest tenure in that position.[22]

On July 30, 2008, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination by Defendant, in violation of the ADEA and ADA.  Within ninety days of the receipt of the EEOC's "Notice of Right to Sue" letter, Plaintiff initiated an action in this Court.  Defendant answered in a timely fashion, and subsequently filed the instant Motion for Summary Judgment within the time permitted by the Court.


## II.      STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23]  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[24]  A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[25]  A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[26]

---

[21] Young Dep. 77:22-78:13.
[22] Young Dep. 77:22-78:13.
[23] Goodman v. Unity Twp., No. 03-1650, 2006 WL 840339, at *2 (W.D. Pa. Mar. 30, 2006) (quoting Fed. R. Civ. P. 56(c)(2) (2010)).
[24] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).
[25] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[26] Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[27] Further, a court may not weigh the evidence or make credibility determinations.[28]   Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record.[29]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[30]  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[31]  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.[32]

## III.   DISCUSSION

As an initial matter, the Court will briefly consider the admissibility of certain exhibits to the parties' filings.  A party moving for summary judgment has the burden of supporting its motion by reference to evidence which is capable of being admissible at trial.[33] If this requirement is satisfied, the burden shifts to the non-moving party to "set out specific facts

---

[27] Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).
[28] Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).
[29] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
[30] Anderson, 477 U.S. at 249-50 (citations omitted); see also Berkeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."); Hartsock v. Wal-Mart Stores East, Inc., No. 07-3200, 2009 WL 4268453, at *2 (E.D. Pa. Nov. 23, 2009) (holding that plaintiff must present enough reasonable evidence for a reasonable juror to find for her; "a mere scintilla of evidence is not enough").
[31] Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).
[32] Celotex, 477 U.S. at 322; Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).
[33] Celotex, 477 U.S. at 322; see also Fed. R. Civ. P. 56(c) (2011).

showing a genuine issue for trial."[34] The non-moving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[35]  The facts the non-movant relies on for these purposes must also be demonstrated by evidence that is capable of being admitted at trial.[36]

Exhibit E to Plaintiff's Opposition is titled "Complainant's Rebuttal to Respondent's Position Statement," and appears to be Plaintiff's submission to the EEOC during its investigation of this claim in March 2009.  Defendant argues that since the statement is unverified, is not based on personal knowledge, contains numerous levels of inadmissible hearsay, and contains representations about what occurred during the EEOC's mediation process, it is inadmissible under Federal Rules of Evidence 602 (Lack of Personal Knowledge), 802 (Hearsay Rule), 805 (Hearsay Within Hearsay), and 408 (Compromise and Offers to Compromise).  Plaintiff contends that the statement itself and Defendant's statements therein are non-hearsay admissible under Federal Rule of Evidence 801(d)(2), as admissions by a party-opponent,[37] and are, furthermore, offered not to prove the truth of the content, but rather to show that these allegedly contradictory statements were made by Defendant.  The Court, mindful that close determinations about the admissibility of evidence at this stage should be made in favor of the non-moving party,[38] is inclined to agree with Plaintiff that Exhibit E is not hearsay at either

---

[34] Ancora Psychiatric Hosp. v. Sec'y of U.S. Dept. of Health & Human Servs., 417 F. App'x 171, 174 (3d Cir. 2011) (quoting Fed. R. Civ. P. 56(e)(2) (2010)).
[35] See Celotex, 477 U.S. at 331; Fed. R. Civ. P. 56(c)(1) (2011).
[36] See Callahan v. A.E.V., 182 F. 3d 237, 252 n.11 (3d Cir. 1999); Fed. R. Civ. P. 56(c)(1) & (2) (2011).
[37] See Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 134 (3d Cir. 1997).
[38] See Anderson, 477 U.S. at 255.

level.[39]  Furthermore, the record in this case is regrettably slim, and the Court is disinclined to

deplete it further at this stage by finding evidence inadmissible where admissibility is a close

call.[40]

### a.  Plaintiff's Disability Discrimination Claim[41]

Where, as here, a plaintiff has adduced no direct evidence of discrimination based on her

alleged disability,[42] the familiar *McDonnell Douglas* burden-shifting analysis is used to evaluate

the claims.[43]  Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a prima

facie case of discrimination by a preponderance of the evidence.  "The existence of a prima facie

case of employment discrimination is a question of law that must be decided by the court but the

prima facie test remains flexible and must be tailored to fit the specific context in which it is

applied."[44]

If a plaintiff establishes her prima facie case, the burden shifts to the employer to

"articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . The

plaintiff then must establish by a preponderance of the evidence that the employer's proffered

reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable

---

[39] Plaintiff's own statements are not hearsay to the extent that they are not offered for the truth of the matter asserted, or not hearsay and admissible under Fed. R. Evid. 801(d)(1) as prior consistent statements by a declarant subject to cross-examination, to the extent that they meet the requirements of Fed. R. Evid. 801(d)(1)(B). However, Federal Rule of Evidence 1002 (Requirement of Original) demands that Plaintiff submit not its own statement quoting and recasting Defendant's EEOC position statements, but rather Defendant's original EEOC Position Statement in its entirety.  In fact, the Court cannot understand why Plaintiff did not provide Defendant's own EEOC statement as evidence, rather than—or, at least, in addition to—Plaintiff's Rebuttal statement.

[40] That said, the Court will *not* consider Exhibit C to Plaintiff's Sur-reply, a letter dated November 6, 2010—three days before the filing date of the Sur-reply—from Plaintiff's former colleague and supervisor Catherine Hawkinson to "Whom it May Concern" regarding Plaintiff's termination.  This letter is utterly unverified and contains inadmissible hearsay.  The parties have had ample time and opportunity to conduct discovery in this case, and, if Plaintiff knew that Ms. Hawkinson might have relevant information, Plaintiff was free to depose Ms. Hawkinson, or, at the very least, obtain from her a sworn affidavit as to these issues.

[41] Plaintiff does not dispute that, because her termination occurred in 2008, Plaintiff's claim must be evaluated pursuant to the statutory language of the ADA (and relevant case law) prior to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (effective January 1, 2009), which is not retroactive.  See, e.g., Fuller v. Geithner, No. 09-2216, 2011 WL 710222, at *7 n.3 (E.D. Pa. Feb. 28, 2011) (citing Seibert v. Lutron Elecs., No. 08-5139, 2009 WL 4281474, at *7 n.6 (E.D. Pa. Nov. 30, 2009); Keyes v. Catholic Charities of the Archdiocese of Philadelphia, No. 09-1887, 2010 WL 290513, at *5 n.3 (E.D. Pa. Jan. 20, 2010)).

job action."[45]  A plaintiff may demonstrate pretext, and so defeat a motion for summary

judgment, by either "(i) discrediting the proffered reasons, either circumstantially or directly, or

(ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than

not a motivating or determinative cause of the adverse employment action."[46]  The Third Circuit

has cautioned that "[i]ssues such as intent and credibility are rarely suitable for summary

judgment. . . . [because] discriminatory intent means actual motive, and is a finding of fact to be

determined by the factfinder."[47]

      To establish a prima facie case of disability discrimination Plaintiff must show that:  (1)

she is a disabled person within the meaning of the ADA, or was regarded by her employer as

having such an impairment; (2) she is otherwise qualified to perform the essential functions of

the job, with or without reasonable accommodations by the employer; and (3) she has suffered an

adverse employment action as a result of discrimination.[48]  Because Defendant does not dispute

that Plaintiff was able to perform the essential functions of her position, with or without

accommodation,[49] and because Plaintiff was terminated, only the first element of her prima facie

case is in dispute.  An individual is disabled if she has "a physical or mental impairment that

---

[42] The Third Circuit has noted that "while courts agree on what is *not* direct evidence—*e.g.*, statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other 'stray remarks'—there is no consensus on what is."  Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.2 (3d Cir. 2002). The Fakete Court also noted that "the adjective 'direct' is imprecise because 'certain circumstantial evidence'"—such as statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus—"is sufficient to shift the burden of proof regarding causation, if that evidence can fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision."  Id. at 339.  In the case at hand, the Court can find no such evidence.

[43] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Wishkin v. Potter, 476 F. 3d 180, 185 (3d Cir. 2007) (applying the same standard of proof and the *McDonnell Douglas* framework to discrimination claims under ADA, ADEA, Title VII and the Rehabilitation Act).

[44] Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2001) (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (*per curiam*)).

[45] Sarullo, 352 F.3d at 797.

[46] Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

[47] Wishkin, 476 F.3d at 184 (internal citations omitted).

[48] Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010).

[49] Stip. Facts ¶ 80.

substantially limits one or more of the major life activities of such individual."[50]  "Major life

activities include functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working.  A major life activity is substantially limited

if an individual is unable to perform it or is significantly restricted as to the condition, manner or

duration under which it is performed, as compared to an average person in the general

population."[51]

  In assessing whether a major life activity has been substantially limited, a court should

consider the following factors:  "'(i) [t]he nature and severity of the impairment; (ii) [t]he

duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact,

or the expected permanent or long term impact of [the impairment] or resulting from the

impairment.'"[52]  The Third Circuit follows the two-step analysis recommended by the EEOC's

interpretive guidelines for determining whether a plaintiff is substantially limited in his ability to

perform a major life activity.  First, a court must determine whether the plaintiff is significantly

limited in a life activity other than working.  Only if a plaintiff is not limited in a life activity

other than working should the court consider whether the plaintiff is substantially limited in the

major life activity of working.[53]  With regard to the major life activity of working, a court must

look to whether an individual is "significantly restricted in the ability to perform either a class of

jobs or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities."[54]  Thus, a court must consider the individual's training,

skills, and abilities to evaluate "whether the particular impairment constitutes for the particular

---

[50] 42 U.S.C. § 12102(2) (2006).

[51] Sulima, 602 F.3d at 185 (citing EEOC regulations) (internal punctuation and citations omitted).

[52] Mondzelewski v. Pathmark Stores, 162 F.3d 778, 783 (3d Cir. 1998) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)) (alteration in the original).

[53] Id. at 783-84.

[54] 29 C.F.R. § 1630.2(j)(3)(i) (2010).

person a significant barrier to employment."[55]  Because a "'person's expertise, background, and job expectations are relevant factors in defining the class of jobs used to determine whether an individual is disabled,' the court must consider the effect of the impairment on the employment prospects of *that* individual."[56]

Plaintiff has testified that she has brachial plexus of the right shoulder and arm, a torn rotator cuff in her left arm, nerve damage in both of her legs with neuropathy, and three bulging discs in her back.[57]  She believes at least some of these conditions resulted from an April 10, 2007 fall at Franciscan, for which she filed a workers' compensation claim that remains active.[58]  The neuropathy, nerve damage, and bulging discs were not diagnosed until after Plaintiff ceased employment with Franciscan.[59]  Plaintiff has testified that, due to her medical conditions, she experiences pain in her right shoulder and both arms, and pain when she walks long distances,[60] but is not taking any pain medication for these conditions.[61]  Plaintiff has further testified that her conditions limit her ability to lift her grandchildren, perform some household chores, fasten her bra in her usual way, lift residents of the Care Center up and pull them with her left arm, spend time at an amusement park such as Disney World without riding in a cart, play with her grandchildren or keep them on her lap for long periods of time, or ride a bicycle without pain.[62]  Finally, the nerve damage in her legs makes it difficult for her to climb stairs (although she can do so), causes her to be careful stepping in and out of the shower, causes her leg to fall asleep

---

[55] <u>Mondzelewski</u>, 162 F.3d at 784 (citation omitted); <u>see also</u> 29 C.F.R. Pt. 1630, App. § 1630.2(j) (determination whether individual is limited in working must be conducted on case-by-case basis).
[56] <u>Mondzelewski</u>, 162 F.3d at 784 (citations omitted) (emphasis added).
[57] Stip. Facts ¶ 64.
[58] Stip. Facts ¶¶ 65-66.
[59] Stip. Facts ¶ 69.
[60] Stip. Facts ¶¶ 71, 74, 76.
[61] Stip. Facts ¶ 79.
[62] Stip. Facts ¶¶ 71, 76, 78.

when she sits for a long time, and limits her from walking long distances without pain.[63]

Nonetheless, both parties maintain that, at all times during her employment with Franciscan,

Plaintiff was physically able to perform the essential functions of her positions.[64]

      Aside from Plaintiff's testimony, the record contains no evidence that Plaintiff is

"disabled" within the meaning of the ADA.  Plaintiff has submitted no medical records, letters or

affidavits from treating physicians, records associated with workers' compensation claims, or

other evidence that might verify Plaintiff's physical condition.  Although the Court agrees that

Plaintiff experiences some limitations in the major life activities of walking and performing

manual tasks, the Court is unable to conclude, without further evidence, that these limitations are

significant enough to meet the statutory definition.  Because Plaintiff has conceded that she was

at all times physically capable of performing her positions at Franciscan, the Court is similarly

unable to conclude that Plaintiff is substantially limited with regard to the major life activity of

working.

      Nevertheless, even where an employee is found not to have a disability within the

meaning of the ADA, the statute protects from discrimination an individual who is "regarded as

having such an impairment" by his or her employer.[65] "To prevail on a claim of this kind, a

plaintiff must show that the employer either 'mistakenly believed that [the employee has] a

physical impairment that substantially limits one or more major life activities' or 'mistakenly

believed that an actual non-limiting impairment substantially limits one or more major life

activities.'"[66]

---

[63] Stip. Facts ¶ 74.
[64] Stip. Facts ¶ 80.
[65] 42 U.S.C. § 12102(2)(C) (2006).
[66] Sulima, 602 F.3d at 187-88 (quoting Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)); see also 29 C.F.R. § 1630.2(l)(1),(3) (2006) (defining "regarded as having such an impairment").

In support of Plaintiff's claim that Defendant regarded her as disabled, Plaintiff offers her own testimony that she discussed her belief that she was disabled with Eileen Albertson, a friend who was a nurse at Franciscan; that on one occasion Ms. Young required Plaintiff to move her car from a lot in front of the Center "out back to handicap;" that at some point, in response to her former supervisor Lorie Clemmons's statement that she could fire Plaintiff, Plaintiff told Ms. Clemmons that she was "partially disabled with the arm."[67] Plaintiff further testified that, immediately after she was terminated by Ms. Young, during her meeting with Ms. Wilson about her severance package, Plaintiff told Ms. Wilson that she was disabled or partially disabled; Plaintiff further testified that she asked Ms. Wilson if Franciscan hired "handicapped people," and Ms. Wilson replied that Franciscan "did not hire disabled people at all."[68]  Plaintiff also points to Ms. Young's testimony that she believed Plaintiff had been transferred to the Unit Clerk position because "facility personnel wanted to put Ms. Fieni into a position that met her physical needs," where "she wouldn't have to do any . . . heavy lifting, any bending, any pushing of the residents."[69]

Finally, Plaintiff believes that her receipt and execution of workers' compensation settlement documents on or about June 20, 2008, led Ms. Hawkinson and other decisionmakers at Franciscan to regard Plaintiff as disabled.[70]  Plaintiff has conceded, however, that she never discussed her workers' compensation claims with Young, Hawkinson, or any Franciscan employee other than her friend Albertson; that she never discussed her physical limitations with Young or Wilson or provided them with documentation regarding her disability; and that she

---

[67] Dep. of Mary Lou Fieni 167:1-24 ("Fieni Dep.").
[68] Fieni Dep. 162:19-24, 200:7-201:13.  Ms. Wilson has denied that she made any such statements.  Dep. of Charlene J. Wilson 47:2-49:24 ("Wilson Dep.").
[69] Young Dep. 65:3-14.
[70] Stip. Facts ¶¶ 81-85. Plaintiff is not, however, able to identify who may have received copies of her workers' compensation documents, or when the documents were received. Stip. Facts ¶¶ 81-84.

never told anyone at Franciscan that she felt she was experiencing discrimination based on her disability, or complained about any form of discrimination.[71]

Although it is a close call, viewing the evidence in the light most favorable to the Plaintiff, and drawing all reasonable inferences in her favor, the Court concludes that there is some material dispute as to whether relevant decisionmakers at Franciscan regarded Plaintiff as disabled within the meaning of the statute.[72]  The facts that Defendant offered Plaintiff a new position in part to accommodate her physical limitations, and that non-decisionmaker employees at Franciscan knew of Plaintiff's limitations based on her filing of workers' compensation claims or because Plaintiff herself stated that she was handicapped, are not by themselves sufficient to show that Defendant regarded Plaintiff as disabled.  But a generous reading of the totality of the available evidence might lead a reasonable factfinder to conclude that relevant decisionmakers at Franciscan regarded Plaintiff as significantly limited in her ability to walk or perform tasks essential to a number of positions available at Franciscan for an employee with Plaintiff's education and experience.

In addition, the Court concludes that Plaintiff has adduced sufficient evidence to call into question Defendant's articulated reason for her termination. Although there is no evidence suggesting that Franciscan was not, in fact, conducting a broader reduction in force due to budgetary considerations, there is sufficient evidence in the record and the pleadings from which a reasonable factfinder could conclude that Defendant's reason for terminating Plaintiff specifically—*i.e.*, that, having decided to eliminate one of the Unit Clerk positions, Defendant chose to terminate Plaintiff based on her lack of seniority in that position—was a pretext for unlawful discrimination.  In light of the timing of Plaintiff's termination, the testimony

---

[71] Stip. Facts ¶ 91.

[72] For example, Plaintiff has testified that on one occasion Ms. Young required Plaintiff to move her car from a lot in front of the Center "out back to handicap."  Fieni Dep. 190:8-24.

suggesting that relevant decisionmakers such as Ms. Young regarded Plaintiff as physically unfit to perform tasks essential to her various positions, and additional, somewhat contradictory reasons advanced by Defendant for Plaintiff's termination, the Court finds that genuine issues of material fact exist as to Defendant's intent in terminating Plaintiff.

More than any individual fact in the record, the timeline of Plaintiff's employment history and termination is especially suggestive of discriminatory intent.  Within a period of less than a year and a half, Plaintiff suffered two workplace injuries; filed workers' compensation claims and received benefits for at least one of these; took a month of medical leave as a result of surgery; was transferred from the position she had held since 2000 to first one and then a second new position, in part to accommodate her physical limitations; was disciplined several times within her last position according to newly implemented policies and expectations for that position; and, finally, having held this last position for just six months, was terminated based on her "lack of seniority" in that position.  Taken as a whole, the evidence is such that the Court cannot grant Defendant's motion for summary judgment as to Plaintiff's disability discrimination claims.

### b.  Plaintiff's Retaliation Claim

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."[73]  Unlike a claim for discrimination, accommodation or harassment, an ADA retaliation claim does not require that a plaintiff show that he or she is "disabled" within the meaning of the ADA.[74]  Instead, Plaintiff need only show that Defendant retaliated against her for engaging in protected activity.  Activity protected from

---

[73] 42 U.S.C. §  12203(a).
[74] Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).

retaliation under the ADA includes not only bringing or participating in formal actions to enforce ADA rights, but also informal activity such as requesting an accommodation for a disability.[75]

Plaintiff submits that she was retaliated against for filing workers' compensation claims and receiving benefits.  The Third Circuit has not yet addressed whether the application for or receipt of workers' compensation benefits is protected activity under the ADA, but a plain reading of the statute suggests that it is *not* protected activity.  Further, although there is no binding precedent on this issue, several federal district courts have addressed the issue and reached the same conclusion.[76]  Plaintiff has identified no other protected activity in which she engaged—such as requesting accommodation based on a good faith belief of disability,[77] or complaining about any type of discrimination while employed at Franciscan[78]—for which she suffered an adverse employment action.  Because Plaintiff has not pleaded, or adduced evidence in support of, a legally cognizable retaliation claim under the ADA, the Court will grant Defendant's motion as to that claim.[79]

### c.  Plaintiff's Age Discrimination Claim

---

[75] Id. at 188, 191.

[76] See Goodman, 2006 WL 840339, at *6 n.3. See also Leavitt v. SW & B Constr. Co., 766 F. Supp. 2d 263, 286 (D. Me. 2011) ("Other federal courts have rejected that filing a workers' compensation claim constitutes protected activity under the ADA. The United States District Court for the District of South Carolina stated that 'while being retaliated against for filing a workers' compensation claim could certainly constitute a cause of action under state law . . . it does not constitute protected activity under the ADA.'") (citing Coker v. Int'l Paper Co., No. 08-1865, 2009 WL 6057269, at *8 (D.S.C. Sept. 23, 2009), report and recommendation adopted by No. 08-1865, 2010 WL 1072643 (D.S.C. Mar. 18, 2010); see also Mosley v. Potter, No. 05-2816, 2007 WL 1100470, at *9 (S.D.Tex. Apr. 11, 2007); Fleury v. New York City Transit Auth., No. 02-5266, 2004 WL 2810107, at *5 (E.D.N.Y. Dec. 8, 2004), rev'd in part on other grounds, 160 F. App'x. 34 (2nd Cir.2005); Johnston v. Henderson, 144 F. Supp. 2d 1341, 1354 n.5 (S.D. Fla. 2001)).  Pennsylvania law *does* recognize a wrongful termination cause of action for workers' compensation retaliation, see Goodman, 2006 WL 840339, at *6, but Plaintiff has not brought this action under any Pennsylvania common law or statute, or under Title VII. See supra note 2.

[77] Although it is apparent from the record that Defendant transferred Plaintiff to the Unit Clerk position to accommodate the physical limitations caused by her injuries, there is no evidence that Plaintiff requested that accommodation.

[78] Stip. Facts ¶¶ 46, 47, 52, 63.

[79] Facts in the record related to Plaintiff's filing of workers' compensation claims or receipt of benefits pursuant to a workers' compensation settlement have therefore been considered only as they support Plaintiff's "regarded as" disability claim.

The ADEA prohibits, *inter alia*, employment discrimination based on age.[80]  Because Plaintiff has not presented any direct evidence of age discrimination,[81] the *McDonnell Douglas* burden-shifting analysis applies to Plaintiff's claims under the ADEA as well.  The Supreme Court has stated that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* . . . utilized in Title VII cases is appropriate in the ADEA context."[82]  However, the Third Circuit has "conclude[d] that the but-for causation standard required by *Gross* does not conflict with [its] continued application of the *McDonnell Douglas* paradigm in age discrimination cases."[83]

To establish a disparate treatment claim under the ADEA at trial, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.[84]  But to state a claim for age discrimination in the first instance, a plaintiff need only allege that (1) she is over forty, (2) she is qualified for the position in question, (3) she suffered from an adverse employment decision, and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination.[85]  If a plaintiff establishes her prima facie case, the remainder of the analysis is substantially similar to that used to evaluate an ADA claim, and the defendant must come forward with evidence of "a legitimate, nondiscriminatory reason for the discharge."[86]  If the defendant succeeds in producing evidence of such a legitimate reason, the burden of production shifts back to the plaintiff, who must then submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

---

[80] 29 U.S.C. § 623(a).
[81] See supra note 42.
[82] Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2349 n.2. (2009).
[83] Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009).
[84] Gross, 129 S. Ct. at 2350.
[85] See Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).
[86] Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (*en banc*).

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[87]

The elements of a prima facie ADEA claim are not particularly difficult to plead, and Plaintiff has done so here.  Plaintiff's date of birth is May 14, 1943[88] and she was 65 at the time of her termination as a Unit Clerk at Franciscan.  Plaintiff was "qualified" for the position, in that she was physically capable of performing all essential functions of her job at the time of her termination.[89]  Plaintiff's fellow Unit Clerks, Ms. Gibson and Ms. Spence, are approximately fourteen and eighteen years younger than she, respectively, and were not terminated at the same time as Plaintiff.[90]  At ages 50 and 47, Ms. Gibson and Ms. Spence were well within the protected over-forty group in June 2008, but are sufficiently younger than Plaintiff to permit a reasonable inference of age discrimination.[91]

Although Plaintiff repeatedly argues that she was "replaced" by Ms. Gibson in her position as Unit Clerk, the Court cannot agree with this characterization.  Ms. Gibson, who began working as a Unit Clerk at Franciscan in June 2005,[92] had responsibility for the then "East Wing" and "East Pavilion" sections of Franciscan before Plaintiff became a Unit Clerk.[93]  When Plaintiff became a Unit Clerk in January 2008, replacing a much younger part-time Unit Clerk,[94]

---

[87] Id. (quoting Fuentes, 32 F.3d at 763)).

[88] Stip. Facts ¶ 1.

[89] Stip. Facts ¶ 80.

[90] Ms. Gibson's date of birth is October 7, 1957, and Ms. Spence's date of birth is June 14, 1961; Ms. Spence's position as Unit Clerk was eliminated effective October 21, 2009.  Def.'s Reply, Ex. B (Decl. of Elizabeth Boschulte ¶¶ 2-6 ("Boschulte Decl.")).

[91] "In order for a plaintiff to satisfy the 'sufficiently younger' standard, [the Third Circuit has] noted that there is no 'particular age difference that must be shown,' but while '[d]ifferent courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot.'"  Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (quoting Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (alteration and omission in original).

[92] Boschulte Decl. ¶ 3.

[93] Stip. Facts ¶ 16.

[94] Stip. Facts ¶¶ 13-14 ("Plaintiff replaced Maureen Jajinski . . . . [who] was in her early 30's at the time . . . .")

her duties covered portions of the "East Wing."[95]  Immediately after Plaintiff's termination, Ms.

Gibson resumed responsibility for the "East Wing."[96]  Plaintiff has presented no evidence that

Defendant hired a new or additional Unit Clerk, or that Ms. Gibson's resumption of East Wing

responsibility was accompanied by any new duties, an increase in status or salary, or other

evidence that might suggest that Defendant did anything more than redistribute Plaintiff's work

between the two remaining Unit Clerks.[97]

      Plaintiff's facts suggest that her complaint is more accurately described as a "reduction in

force" (or "RIF") claim:

> In ordinary times, employees are fired for poor performance; in a RIF,
> even qualified employees are laid off in order to reduce personnel. . . . But
> even in a genuine RIF (one that is motivated on a programmatic level by
> economic concerns), individuals may not be selected for layoff on the
> basis of age.  For this reason, even in a RIF, we use the *McDonnell
> Douglas* framework to expose such discrimination.  The employer must
> have age-neutral reasons for deciding to lay off certain employees, and the
> employee can challenge these reasons as pretextual.[98]

Here, Defendant has stated repeatedly that Plaintiff was terminated due to "elimination of

position" during a hospital-wide reduction in force and assessment of budget directed by

Franciscan Care Center's corporate parent, Saint Francis Hospital.[99]  Where an employee is

terminated during a reduction in force, the disputed question becomes not whether a plaintiff was

replaced by a younger person, but whether the employer retained similarly situated employees

---

[95] Stip. Facts ¶ 12.
[96] Pl.'s Opp'n, Ex. F (Dep. of Greta Gibson 90:6-91:10 ("Gibson Dep.")).
[97] See, e.g., Wilson Dep. 37:9-16.  See Killen v. Mktg. Commc'n Sys., Inc., 66 F. App'x 293, 297 (3d Cir. 2003)
(holding that evidence that a younger employee assumed many of plaintiff's former job duties was insufficient to
establish a genuine issue of material fact that the employer's stated non-discriminatory reason for termination was
pretextual, where plaintiff's former position was consolidated with two other positions and the younger employee
merely assumed most of plaintiff's former job duties).
[98] Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir. 2006) (citing Showalter, 190 F.3d at 236-38).
[99] Wilson Dep. 36:22-37:16, 63:6-20; Young Dep. 77:22-78:24.

who were sufficiently younger than the plaintiff.[100]  Assuming *arguendo* that Plaintiff was terminated pursuant to a genuine reduction in force, Defendant retained two Unit Clerks who were sufficiently younger than Plaintiff.

Because Plaintiff has made out her prima facie ADEA claim, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination and produce evidence in support of that reason.  Defendant has articulated such a reason, explaining that Plaintiff was terminated due to budgetary reasons and elimination of position pursuant to a hospital-wide reduction in force.[101]  Defendant has further explained that its decision to terminate Plaintiff specifically was based on Plaintiff's seniority in the position of Unit Clerk (*i.e.*, least senior of the three Unit Clerks), rather than on her seniority as an employee at Franciscan as a whole.[102]  Plaintiff has offered no evidence to suggest that Defendant was *not* conducting a hospital-wide reduction in force motivated by budgetary concerns, or that Defendant's seniority explanation was a pretext for targeting Plaintiff for termination based on her age.  Plaintiff cannot simply rely on the facts that support her prima facie case to rebut Defendant's articulated reason, and assert that Defendant's intent is a question of fact that must be determined by a jury.[103]  Defendant's intent is, indeed, a question of fact; however, without additional evidence that raises a genuine issue material to that intent, the mere fact that similarly situated employees younger than Plaintiff were not terminated is insufficient to withstand summary judgment.

---

[100] See, e.g., Tomasso, 445 F.3d at 706 n.4 (citing Schowalter, 190 F.3d at 234-35); Anderson v. CONRAIL, 297 F.3d 242, 249 (3d Cir. 2002).
[101] Young Dep. 77:22-78:24; Wilson Dep. 34:14-16
[102] Young Dep. 78:4-24.  Plaintiff began working at Franciscan as a Scheduler on or about January 24, 2000, and began working as a Unit Clerk on January 12, 2008.  Stip. Facts ¶¶ 2, 12.  Ms. Gibson began working at Franciscan as a Certified Nursing Assistant at some point in 1994, Gibson Dep. 20:15-21:7, and as a Unit Clerk  on June 19, 2005.  Boschulte Decl. ¶ 3.  Spence began working as a Unit Clerk on October 9, 2005.  Boschulte Decl. ¶ 5.
[103] Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 8 ("Pl.'s Opp'n") [Doc. No. 13].

First, it should be noted that it is not the Court's job to prospect the record for evidence in support of a non-movant's argument.[104]  Plaintiff's Opposition and Sur-reply point to very little evidence in support of Plaintiff's ADEA claim generally, and to none at all from which a reasonable factfinder might conclude that age played any part in Plaintiff's termination.  Rather, Plaintiff gestures randomly to a handful of deposition excerpts which, at best, support her prima facie case by confirming that a younger employee was assigned East Wing duties after Plaintiff's termination.  Plaintiff herself has testified that she believes only Ms. Young discriminated against her on the basis of age.[105]  In support of her belief, Plaintiff testified to several incidents in which Ms. Young disciplined or criticized Plaintiff,[106] but has presented no evidence—other than her own belief—that younger employees were treated more favorably by Ms. Young or other decisionmakers,[107] or that Ms. Young or any other decisionmaker was aware of Plaintiff's age;[108] nor has Plaintiff offered any other fact which suggests that Ms. Young or another decisionmaker was motivated by discriminatory age-based animus.  Defendant, on the other

---

[104] See United States v. 5443 Suffield Terrace, 607 F.3d 504, 510-11 (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")); see also Perkins v. City of Elizabeth, No. 05-3786, 2009 WL 5178385, at *3 (D.N.J. Dec. 30, 2009) ("It is not the Court's responsibility to sift through Plaintiff's submission in an attempt to find evidence which supports or provides better context for each of Plaintiff's allegations."); Hunter v. Stouffer Equip. Co., No. 08-1270, 2009 WL 2982668, at *4 n.10 (M.D. Pa. Sept. 14, 2009) (noting that courts will not "dredge through record evidence to find questions of material fact").

[105] Stip. Facts ¶ 49.

[106] Plaintiff has testified that she believes that she was discriminated against because of her age due to the following events:  (1) Ms. Young criticized Plaintiff for chewing gum, because it was "unprofessional;" (2) Gibson assumed Plaintiff's duties on the East Wing after Plaintiff's termination; (3) Ms. Young told Plaintiff that she had to make personal appointments outside of work hours, but never disciplined Plaintiff for attending personal appointments during work hours; (4) Plaintiff felt that she did not receive sufficient or consistent training for the Unit Clerk position; (5) Plaintiff was bitten by a dog in Ms. Young's office, and Ms. Young told Plaintiff that the bite would be covered by workers' compensation, but Ms. Young would not personally pay her medical bills; (6) Plaintiff received a written warning for ordering a supply at high cost, even though another employee told her to order the supply; (7) on an occasion where a maintenance worker had told Plaintiff she could park her car in the front lot, Ms. Young made her move her car to the back lot. See Stip. Facts ¶ 53(a)-(g); Fieni Dep. 190:2-24.

[107] Plaintiff also testified that (1) she did not know if Ms. Young ever criticized another employee for chewing gum; (2) she does not know what training Ms. Gibson or Ms. Spence received in the Unit Clerk position; (3) the dog bit three other people, at least one of whom was younger than Plaintiff.  See Stip. Facts ¶ 53(a),(d) and (e).

[108] The parties have stipulated that Ms. Young never made any comments to Plaintiff about her age, or referred to Plaintiff's age in conversation.  Stip. Facts ¶¶ 50-51.  Ms. Wilson has testified that she did not know Plaintiff's age. Wilson Decl. ¶¶ 2-4.

hand, has pointed out that Plaintiff was first hired by Franciscan at age 56, that Plaintiff replaced a much younger employee as Unit Clerk in January 2008, and that, when Franciscan conducted further reductions in force in 2009, the younger of the two remaining Unit Clerks was terminated, for the same seniority-based reason Defendant offered to explain Plaintiff's termination.[109]  Based on the evidence offered by both parties, even viewed in the light most favorable to the Plaintiff, the Court is not persuaded, and cannot fairly conclude, that a genuine issue of material fact exists as to Plaintiff's ADEA claim.


**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment as to Count One (Violation of the Age Discrimination in Employment Act), and as to the retaliation claims in Count Two (Violation of the Americans with Disabilities Act), but will deny the motion as to the discrimination claims in Count Two.  An appropriate Order follows.

---

[109] Def.'s Reply Mem. in Further Supp. of its Mot. for Summ. J. at 15 ("Def.'s Reply") [Doc. No. 14]; Boschulte Decl. ¶¶ 2-7.